# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Gary Allen Kachina, | Civil No. 12-0873 (ADM/JJG) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Tom Roy, Commissioner of Corrections, | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This case is before the undersigned on Gary Allen Kachina's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the petition be denied and judgment be entered.

## I. BACKGROUND

Gary Allen Kachina ("Petitioner") is presently incarcerated at the Minnesota Correctional Facility (MCF) in Faribault, Minnesota. He is serving a 57-month prison term for first-degree burglary and a 90-day sentence for receiving stolen property. Petitioner was convicted by a jury on October 12, 2010, and sentenced on November 5, 2010. He subsequently appealed to the Minnesota Court of Appeals, which affirmed the district court's ruling. *State v. Kachina*, No. A11-39, 2012 WL 171378, at * 1 (Minn. Ct. App. Jan. 23, 2012). On March 28, 2012, the Minnesota Supreme Court denied review. Petitioner filed a petition for habeas relief on April 6, 2012, asserting that the district court erred by admitting other-crime evidence at trial.

### A. Petitioner's Trial

The prosecution presented the following evidence at Petitioner's trial. On the morning of September 5, 2009, D.L. made preparations to wash his car in the driveway of his Hopkins home. *Id.* at *1. Before washing his car, he stepped inside to have a cup of coffee, leaving his car unlocked and his garage door opener on the car's front seat. *Id.* While inside, D.L. heard his garage door opening. *Id.* D.L. discovered a man, later identified as Petitioner, standing inside the open garage. *Id.* Petitioner told D.L. that he was just a neighbor and had entered D.L.'s garage by mistake. *Id.* D.L. knew that Petitioner was actually not a neighbor and wrested the garage door opener from Petitioner's hand. *Id.* D.L. removed Petitioner from the garage and threw him in a ditch next to the driveway. *Id.* D.L. initially sat on Petitioner to restrain him, but had to move in order to call the police. *Id.* Petitioner then fled the scene. *Id.*

Later that afternoon, T.N. was also washing his car in his Hopkins driveway. *Id.* He watched a man, later identified as Petitioner, run out of T.N.'s screened-in porch. *Id.* Petitioner leapt over a fence with T.N. in pursuit. *Id.* T.N. caught Petitioner and asked him why he was in T.N.'s porch. *Id.* Petitioner said that T.N. was mistaken and that he was never in T.N.'s porch. *Id.* T.N. then telephoned the police. *Id.*

When the police officers arrived, Petitioner fled the scene. *Id.* While being pursued by the officers, Petitioner discarded any forms of identification as well as a GPS navigation unit. *Id.* The officers subsequently apprehended and arrested Petitioner. *Id.* D.L. and T.N. separately identified Petitioner as the intruder each had encountered on their respective properties. *Id.* Additionally, the GPS unit Petitioner tossed during his flight from the police had been reported stolen from a car parked in a driveway in St. Louis Park. *Id.*

The prosecution charged Petitioner with one count of first-degree burglary under Minnesota Statutes § 609.582, subdivision 1(a) (2008) and one count of receiving stolen property under Minnesota Statutes §§ 609.53, subdivision 1 (2008), and 609.52, subdivision 3(5) (2008). Prior to trial, the State informed Petitioner that it intended to introduce evidence of his August 2004 first-degree burglary conviction pursuant to *State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965). *Kachina*, 2012 WL 171378, at *2. The State planned to use the evidence to demonstrate that Petitioner did not enter the garage by mistake, intended to steal, or was following a common plan or scheme. *Id.* The facts of the 2004 burglary bore similarities to the 2009 burglaries. In that case, a homeowner discovered Petitioner in his home in the middle of the night. *Id.* When confronted by the homeowner, Petitioner fled through a screen door and was later apprehended in possession of the homeowner's credit card. *Id.*

Petitioner moved the district court to exclude the evidence of his 2004 burglary conviction as improper character evidence under Rule 404(b) of the Minnesota Rules of Evidence. *Id.* The court said it would "listen closely to the state's evidence during trial before ruling on the admissibility of evidence of the 2004 burglary" but said it would not allow evidence of the 2004 *conviction* to be admitted. *Id.* at *2. Although the court believed the conviction was indeed admissible, the court found that admitting testimony from the State's witness to the 2004 burglary would be a less prejudicial alternative. *Id.*

At trial, the district court allowed evidence of the 2004 burglary because it believed the State's evidence on the element of Petitioner's intent was weak. *Id.* The court also believed that evidence of the 2004 burglary showed Petitioner acted with a common plan. *Id.* Petitioner objected, asserting the evidence of his intent was not weak and the 2004 burglary evidence was more prejudicial than probative. *Id.* The district court ruled that the evidence's probative value

outweighed any potential prejudice to Petitioner. *Id.* The court then permitted the transcript of a witness to the 2004 burglary to be read to the jury.[1] *Id.* The district court gave a limiting instruction prior to admitting the transcript and again at the close of trial. *Id.* The jury heard testimony from the 2004 burglary trial about a man being found inside a home. *Id.* The district court clarified that the testimony was referring to Petitioner. *Id.* The court explained: "the person that [the witness] was talking about as it relates to the event on May [10,] 2004 . . . [is] Mr. Kachina." *Id.* (internal quotations omitted). Petitioner objected to the judge's statement and was overruled. *Id.* The court believed that allowing the jury to hear testimony about the conduct underlying the 2004 conviction was less prejudicial than allowing the jury to learn of Petitioner's actual conviction. *Id.*

The jury found Petitioner guilty of both first-degree burglary and receiving stolen property. The court sentenced him to 57 months in prison for the burglary charge and 90 days for receiving stolen property. *Id.* at *3. Petitioner appealed the decision to the Minnesota Court of Appeals.

**B.     The Appeal**

On appeal, Petitioner argued that the district court was not impartial because the judge identified him in the 2004 burglary testimony and that the judge's partiality constituted a structural error requiring automatic reversal or, in the alternative, that the judge's statement to the jury regarding the 2004 burglary testimony was harmful and unfairly prejudicial. *Id.* The appellate court affirmed the district court's ruling, holding that although the district court erred by stating that the testimony referred to Petitioner, the district court committed neither structural

---

[1] The State's witness from the 2004 burglary was unavailable to testify, but Petitioner had a prior opportunity to cross-examine him. Petitioner also had an opportunity to review the transcript and remove any objectionable portions prior to it being read.

4

error nor harmful trial error. *Id.* at *4. Petitioner appealed to the Minnesota Supreme Court, which denied review.

## II. DISCUSSION

### A. Standard of Review

A writ of habeas corpus is employed to bring a person before a court, most frequently to ensure that the person's imprisonment or detention is not illegal. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Antiterrorism and Effective Death Penalty Act (AEDPA) prescribes the standards underlying petitions for writs of habeas corpus made by prisoners in state custody. The relevant portion of AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The clause "contrary to" in 28 U.S.C. § 2254(d) "means (1) that the state court reached a conclusion of law in opposition to the holdings of the United States Supreme Court or (2) failed to reach the same decision as the Supreme Court on a case with materially indistinguishable facts." *Evans v. King*, Civ. No. 10-4045, 2012 WL 4128509, at *6 (D. Minn. Sept. 19, 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The unreasonable application clause provides that "even if the state court correctly identifies the relevant Supreme Court principle, a prisoner's writ may be granted if the state court applied the principle unreasonably to the facts of

5

the case." *Id.* A state court's "application of clearly established federal law must be *objectively unreasonable*, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Id.* (emphasis added).

Additionally, § 2254(d)(2) states that a writ of habeas corpus may also be available where the state court's decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). When reviewing a state court's decision, "a determination of a factual issue made by a state court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner shall have "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### B. Structural Error

Here, Petitioner has asserted that the trial court committed structural error—in the form of judicial bias—requiring automatic reversal because the judge identified Petitioner as the man referred to in the testimony regarding the 2004 burglary.

The Supreme Court has held that constitutional errors occurring in a criminal proceeding fall into one of two categories: "trial errors" or errors reflecting "structural defects." *Arizona v. Fulminate*, 499 U.S. 279, 309 (1991). Structural errors are "defects affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Becht v. United States*, 403 F.3d 541, 547 (8th Cir. 2005) (quotation omitted). Such errors "call into question the very accuracy and reliability of the trial process and thus are not amenable to harmless error analysis, but require automatic reversal." *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998). In these cases, the error causes a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulminate*, 499 U.S. at

310. It is well established most constitutional errors in criminal trials do not require automatic reversal of the conviction. *Neder v. United States*, 527 U.S. 1, 7-8 (1999).

Structural errors have been recognized in a very limited set of circumstances, such as "the complete denial of counsel, a biased judge, racial discrimination in jury composition, denial of a public trial, and a defective jury instruction on the reasonable-doubt standard of proof." *Becht*, 403 F.3d at 547.

Petitioner claims that the judge's statement regarding the 2004 burglary testimony destroyed the court's image of impartiality and thus violated Petitioner's constitutional right to an unbiased trial judge. A trial before a biased judge is considered presumptively unfair, and such unfairness is reason enough to grant habeas relief. *Ryan v. Kenney*, 281 F. Supp. 2d 1008, 1073 (D. Neb. 2002) (citing *Walker v. Lockhart*, 763 F.2d 942, 960 (8th Cir. 1985)). However, most questions concerning a judge's qualifications are not constitutional in nature. *Id.*

The Supreme Court has recognized two main instances that merit a conclusive presumption of actual bias because they carry such a high probability of judicial bias: "first, where the judge has a pecuniary interest in the outcome of a trial; and second, where the judge has been the target of personal abuse or criticism from the party before him." *Id.* (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)) (internal quotations omitted).

Neither of these scenarios is applicable to the case at bar. The record is absent of any indication that the trial judge had a pecuniary interest in the outcome of the trial. Nor does the record show that the trial judge was the target of any personal abuse from Petitioner. Quite the opposite, the record instead indicates the judge was attempting to mitigate the prejudice suffered by Petitioner by using only the 2004 burglary *testimony* to avoid any prejudice that may have arisen from the admission of a certified copy of Petitioner's *conviction*. In an additional attempt

7

to reduce any prejudice, the judge also gave limiting instructions prior to reading the transcript and again at the end of trial.

Petitioner cites three federal cases—*United States v. Berber-Tinico*, 510 F.3d 1083 (9th Cir. 2007); *Crater v. Gonzalez*, 491 F.3d 1119 (9th Cir. 2007); and *In re Murchison*, 349 U.S. 133 (1955)—in support of his structural error claim. These cases, however, are distinguishable.

Petitioner relies on *Crater* for the proposition that the appearance of judicial bias constitutes structural error in three circumstances: (1) where a judge has a pecuniary interest in the case's outcome; (2) where the judge becomes embroiled in a running, bitter controversy with one of the litigants; and (3) where the judge acts as part of the accusatory process. *Crater*, 491 F.3d at 1131. As explained above, the trial judge's conduct did not fall into the first two categories. Nor does the judge's conduct fall into the third category, as violations of Federal Rule of Evidence 605 normally do not rise to the level of structural error.

Rule 605 of the Federal Rules of Evidence states that a judge may not testify at trial as a witness. *Berber-Tinico*, 510 F.3d at 1089 (citing Fed. R. Evid. 605). In *Berber-Tinico*, the defendant claimed a "judge's interjections in violation of Rule 605 destroyed the court's image of impartiality and thus violated a defendant's constitutional right to an unbiased trial judge." *Id.* at 1092. The Ninth Circuit held, however, that "a Rule 605 error, without more, does not rise to the level of a structural constitutional error." *Id.* The court instead applied the harmless error standard and found that, although the judge violated Rule 605, there was "no serious concern here that the judge's comments and personal knowledge influenced any aspect of the trial or hearing . . . ." *Id.* at 1093. Even assuming the trial judge's comment violated Rule 605, a suspect conclusion in itself, the clarifying comment was harmless.

Petitioner relies on *Murchison* for the proposition that a judge may not take part in the accusatory process. *See In re Murchison*, 349 U.S. at 136. In *Murchison*, the judge served as a one-man grand jury and then subsequently presided over the same defendant's contempt trial. *Id.* The Supreme Court held that the judge's conduct was a violation of the defendant's due process rights, stating "as a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session." *Id.* at 138. The Court reasoned that if the charge should be heard before that judge, "the result would be either that the defendant must be deprived of examining or cross-examining him or else there would be the spectacle of the trial judge presenting testimony upon which he must finally pass in determining the guilt or innocence of the defendant." *Id.* Here, in contrast to *Murchison*, the trial court was not involved in charging Petitioner, and there is no evidence the trial judge was involved in the accusatory process.

Therefore, Petitioner is unable to show that the trial court's statement identifying him as the man referred to in the 2004 burglary testimony rose to the level of structural error. The court's statement was consistent with clearly established federal law.

### C. Trial Error

Petitioner maintains that even if there was no structural error, the court's statement to the jury regarding the 2004 burglary testimony was harmful and unfairly prejudicial. In contrast to structural error, trial error is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminate*, 499 U.S. at 307-08. The *Fulminate* Court stated that it has "applied harmless-error analysis to a

wide range of errors and has recognized that most constitutional errors can be harmless." *Id.* at 306.

The Supreme Court has repeatedly identified constitutional errors that are subject to harmless error analysis. *E.g.*, *Clemons v. Mississippi*, 494 U.S. 738, 752-54 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); *Satterwhite v. Texas*, 486 U.S. 249 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment); *Crane v. Kentucky*, 476 U.S. 683, 691 (1986) (erroneous exclusion of defendant's testimony regarding the circumstances of his confession); *Moore v. Illinois*, 434 U.S. 220, 232 (1977) (admission of identification evidence in violation of the Sixth Amendment); and *Chambers v. Maroney*, 399 U.S. 42, 52-53 (1970) (admission of evidence obtained in violation of the Fourth Amendment).

In applying harmless-error analysis to the various constitutional violations,

> [T]he Court has been faithful to the belief that the harmless-error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Fulminate*, 499 U.S. at 308 (quoting *Delaware v. Van Arsdell*, 475 U.S. 673, 681 (1986)).

The United States Supreme Court set forth the harmless-error standard in *Brecht v. Abrahamson*: Federal courts may not grant habeas relief unless the trial error "had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under this standard, "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.*

Here, Respondent has conceded that the district court erred by stating the 2004 testimony referred to Petitioner. However, the error was not severe enough to have "a substantial and injurious effect or influence in determining the jury's verdict." First, the prosecution could have properly introduced into evidence the portion of the witness's transcript identifying Petitioner as the person involved in the 2004 burglary. Otherwise, the testimony of the witness would not have had any apparent relevance to the case before the jury.

Second, there was overwhelming evidence that Petitioner intended to commit theft inside both D.L.'s garage and T.N.'s porch. D.L. testified that he found Petitioner in his garage holding the garage door opener. Petitioner untruthfully told D.L. that he was a neighbor and entered the garage mistakenly. He then fled the scene. T.N. testified that he watched Petitioner walk out of T.N.'s screened-in porch, but Petitioner told T.N. that he was never on the porch and then fled the scene. When Petitioner was apprehended, he was in possession of a GPS unit reported stolen from a different driveway in St. Louis Park.

Third, as both the trial court and the Minnesota Court of Appeals determined, "the evidence of the 2004 conviction itself could have been properly presented to the jury, and of course the conviction would have identified Kachina." *Kachina*, 2012 WL 171378, at *5. The trial court's decision to admit the 2004 trial transcript because it was less prejudicial than admitting the conviction itself did not render the conviction inadmissible.

In sum, the Court finds that the jury likely did not rest its verdict on the trial court's statement regarding the 2004 burglary testimony. There was sufficient evidence to support the jury's verdict without the challenged evidence. Because the verdict was not attributable to the judge's statement identifying Petitioner as the subject of the 2004 testimony, the trial error did not rise to the level of substantial and injurious and, therefore, was harmless.

### III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED** and **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: December 13, 2012

    s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge


### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **January 2, 2013**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.