UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gary Allen Kachina,

       Petitioner,

  v.

Tom Roy, Commissioner of Corrections,

       Respondent.

**MEMORANDUM OPINION AND ORDER**
Civ. No. 12-873 ADM/JJG

Gary Allen Kachina, pro se.

Linda M. Freyer, Esq., Hennepin County Attorney's Office, Minneapolis, MN; Matthew Frank, Esq., Minnesota Attorney General's Office, St. Paul, MN, for Respondent.

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Gary Allen Kachina's Objections [Docket Nos. 17, 18] to Magistrate Judge Jeanne J. Graham's December 13, 2012 Report and Recommendation [Docket No. 16] ("R&R"). In her R&R, Judge Graham recommended denying Kachina's Writ of Habeas Corpus petition [Docket No. 1] ("Petition") and dismissing the case summarily. After a thorough de novo review of the record and for the reasons stated below, Kachina's Objections are overruled and Judge Graham's R&R adopted.

## II. BACKGROUND

The factual and procedural history of this dispute are more fully recited in Judge Graham's R&R and are incorporated here by reference. In summary, while making coffee on September 5, 2009, D.L., a Hopkins resident, heard his garage door opening and went outside to discover a man standing in his garage. See State v. Kachina, No. A11-39, 2012 WL 171378, at

*1 (Minn. Ct. App. Jan. 23, 2012).  The man, later identified as Kachina, claimed he was a neighbor and had mistakenly entered D.L.'s garage.  Id.  D.L. concluded this was not true, and saw that Kachina had taken D.L.'s garage door opener from inside D.L.'s car, which was parked in the driveway.  See id.  After a struggle, D.L. tackled Kachina, but Kachina escaped when D.L. called the police.  Id.

Later that afternoon, T.N. saw a man, later identified as Kachina, running out of T.N.'s screened-in porch.  Id.  T.N. pursued and also confronted Kachina.  Id.  When T.N. asked why Kachina had entered T.N.'s porch, Kachina said T.N. was mistaken and that Kachina had never entered the porch.  Id.  T.N. called the police, but Kachina again fled as the police officers arrived on the scene.  Id.  The officers later apprehended Kachina.  Id. at *2.  D.L. and T.N. separately identified Kachina as the intruder they had each encountered.  Id. at *1.  The officers also collected a Global Positioning Satellite (GPS) unit Kachina had discarded as he fled; the officers discovered that the GPS had been reported stolen from a car in St. Louis Park.  Id. at *2.

Before trial, the prosecution informed Kachina that it intended to offer evidence of Kachina's August 2004 first degree burglary to demonstrate that Kachina did not enter D.L.'s garage by mistake, that he intended to steal, or was following a common plan or scheme.  Id. at *2.  Kachina moved to exclude the 2004 burglary as improper other crimes evidence under Rule 404(b) of the Minnesota Rules of Evidence.  Id.

After considering the State's evidence, the state trial court (the "district court") held the State would be allowed to present testimony only of the 2004 burglary itself, and not the resulting conviction.  Id.  The district court concluded that this approach struck the proper balance between allowing the jury to consider the probative value of the evidence and limiting

the evidence's unfairly prejudicial effect. Id. Because the State's witness in the 2004 burglary was unavailable when the case was tried in 2010, the State prosecutor read to the jury a portion of testimony given by a witness at the 2004 burglary trial. The district court gave limiting instructions to the jury both before the testimony's admittance and at the close of trial. Id. In addition, Kachina's attorney was allowed to remove portions of the testimony he did not want read to the jury. Id. Because the portion of the testimony read to the jury did not specifically identify Kachina as the burglar in 2004, the district court advised the jury that the testimony read was about Kachina by saying, "the person that [the witness] was talking about as it relates to the event on May [10,] 2004 . . . [is] Mr. Kachina." Id. Kachina objected to this statement but was overruled. Id.

On October 12, 2010, the jury convicted Kachina of first degree burglary and receiving stolen property. Petition 1-2. The district court sentenced Kachina to a 57-month term of imprisonment for the first charge and a 90-day term for the second. Id. at 2. Kachina appealed, arguing that the district court was not impartial because the judge identified Kachina as the burglar in the 2004 incident. Kachina argued that this partiality was a structural error, or, in the alternative, that the judge's statement to the jury regarding the 2004 burglary testimony was harmful and unfairly prejudicial. The Minnesota Court of Appeals affirmed the conviction. See Kachina, 2012 WL 171378, at *6. The Minnesota Supreme Court subsequently denied review and on April 6, 2012, Kachina filed his Petition in federal court.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a magistrate judge's R&R, the district court "shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**B. Petitioner's Objections**

In his Objections to the R&R, Kachina re-argues the merits of his Petition rather than challenging Judge Graham's reasoning. Kachina argues that the district court's violation of Minnesota Rule of Evidence 605 rises to the level of a structural error, as the court's comments had "a very strong influence" on the jury and demonstrate judicial bias. Mem. Supp. Pet'r's Objections [Docket No. 18] 1-2. Kachina argues that the court's comment identifying Kachina as the subject of the 2004 burglary testimony resulted in the court joining in the accusatory process as a material witness, and that the State would have been otherwise unable to prove Kachina's alleged role in the 2004 burglary. Id. at 6-8. Kachina also argues that he was denied the ability to subsequently cross-examine or otherwise confront the district court's statement. Id. In addition, Kachina argues that this type of error "cannot be rendered harmless." Id. at 11.

As discussed by Judge Graham, the United States Supreme Court has divided constitutional errors in criminal proceedings into two types: trial errors and structural errors. See Arizona v. Fulminante, 499 U.S. 279, 307-09 (1991). Courts review trial errors under the "harmless error" analysis, and will affirm a conviction if the trial error is "harmless beyond a reasonable doubt." Ford v. Norris, 67 F.3d 162, 170 (8th Cir. 1995) (citation omitted). On the other hand, structural defects alter "[t]he entire conduct of the trial from beginning to end." Fulminante, 499 U.S. at 309-10. Examples of structural defects include the unlawful exclusion

4

of members of the defendant's race from a grand jury, deprivation of the right to self-representation at trial, and deprivation of the right to a public trial. See id. at 310. Errors of this kind affect "the framework within which the trial proceeds," instead of being a simple error in the trial process itself. Id. The presence of a structural defect in criminal proceedings requires a reversal. McGurk v. Stenberg, 163 F.3d 470, 474 (8th Cir. 1998) (holding denial of jury trial is a structural error subject to "automatic reversal").

Given the arguments Kachina makes in his Objections, both structural defect and trial error are considered below.

**C. Structural Error**

The Supreme Court has held that judicial bias is a structural error, because a "fair trial in a fair tribunal is a basic requirement of due process," and "[f]airness . . . requires an absence of actual bias in the trial of cases." In re Murchison, 349 U.S. 133, 136 (1955); see also Tumey v. Ohio, 273 U.S. 510, 532 (1927). But this standard is "inherently vague," and state courts necessarily have "considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, Murchison and Tumey." Jones v. Luebbers, 359 F.3d 1005, 1012-13 (8th Cir. 2004) (citing, in part, Williams v. Taylor, 529 U.S. 362 (2000)). The Supreme Court has specifically recognized judicial bias in at least two circumstances: (1) when a judge has a pecuniary interest in the outcome of a case; and (2) when "procedural infirmities" preclude the possibility of a disinterested presiding judge. See Jones, 359 F.3d at 1013 (reviewing Supreme Court precedent). Unfavorable rulings, even "ill-founded" rulings, do not by themselves demonstrate judicial bias or structural error. See id. (citations omitted).

The court's statement to the jury identifying Kachina as the subject of the 2004 burglary

testimony is not a structural defect. Kachina cites several decisions in support of his argument, but the district court's statement in this case does not rise to the egregious level of conduct found in those cases. In Murchison, the trial judge took part in the accusatory process by acting as a one-man grand jury before presiding over the trial; this amounted to the sort of procedural infirmity contemplated by the Supreme Court. See Jones, 359 F.3d at 1013 (citing Murchison, 349 U.S. at 135-38).

In other cases Kachina cites, the judges advised the jury of their assessment of the defendant's credibility. For example, in Quercia v. United States, 289 U.S. 466, 468 (1933), the judge told the jury, "I think that every single word [the defendant] said, except when he agreed with the Government's testimony, was a lie." And in United States v. Pritchett, 699 F.2d 317 (6th Cir. 1983), the Sixth Circuit Court of Appeals found reversible error when the trial court confirmed what the prosecution was otherwise unable to prove: the defendant's associate was a convicted cocaine dealer, and the court thus impermissibly suggested guilt by association to the jury. Id. at 320.

In yet other cases, the judge introduced evidence based on a personal recollection of events. See Tyler v. Swenson, 427 F.2d 412, 417 (8th Cir. 1970) (finding reversible error where "judge's recollection was the only testimony which refuted petitioner's claim"); see also Terrell v. United States, 6 F.2d 498, 499 (4th Cir. 1925) (holding that while judge has the "right and duty" to elicit relevant facts by questions, judge may not "testify in the form of questions"). Kachina also cites United States v. Blanchard, 542 F.3d 1133 (7th Cir. 2008), in which the Seventh Circuit Court of Appeals reviewed a trial judge's decision to allow the introduction of comments made by the judge at a suppression hearing regarding the defendant's credibility. The

Seventh Circuit held that a judge violates Rule 605 of the Federal Rules of Evidence when the judge introduces facts based on his or her personal recollection, as opposed to commenting on facts in the record or facts "reasonably derived" from the record. See id. at 1148-49 (citing, in part, United States v. Berber-Tinoco, 510 F.3d 1083, 1091 (9th Cir. 2007)). A judge may also violate Rule 605 by introducing evidence "which the prosecution was otherwise unable to establish." Id. at 1149 (citing United States v. Nicki, 427 F.3d 1286, 1293-94 (10th Cir. 2005)). However, the Seventh Circuit declined to rule on whether the judge's conduct in that case amounted to judicial bias, finding instead a reversible trial error. Id. at 1153-54.

The district court's statement in this case is of a much different character. There is no evidence that the district court participated in the accusatory process, and no evidence that the court weighed the initial evidence and determined whether the charges against Kachina were appropriate. See Murchison, 349 U.S. at 136-37. And unlike in Quercia or Pritchett, the court here did not openly attack Kachina's credibility. On the contrary, the court attempted to mitigate prejudice by twice issuing limiting instructions to the jury and allowing the defense to redact the transcript. Also, the court only identified Kachina as the subject of the 2004 testimony; it did not state that Kachina committed the burglary, nor did it discuss Kachina's conviction of the charge.

Of equal importance, the district court did not identify Kachina as the subject of the 2004 burglary testimony based on personal knowledge, nor did the court weigh in on the merits of a matter in dispute. Kachina's 2004 burglary conviction was a matter of public record, and both parties knew that the 2004 burglary testimony was directed at Kachina. If the court had not made its statement, as Judge Graham noted, the prosecution could have simply presented additional testimony connecting Kachina to the 2004 burglary. See Blanchard, 542 F.3d at

7

1148-49 (holding judicial statements not a violation of Rule 605 if stated information could be "reasonably derived" from facts on the record) (citation omitted). Kachina's arguments in this regard are thus inapposite. The district court did not present information unavailable to the prosecution; on the contrary, the court chose to limit prejudice by expressly allowing testimony of Kachina's 2004 burglary instead of his related conviction. Kachina's identity as the subject of the 2004 testimony was never in dispute. As a result, the district court's statement did not amount to structural error.

**D. Trial Error**

Kachina next argues that the district court's statement was more than harmless error. When a state court has adjudicated a claim on the merits, a habeas petition will not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Christenson v. Ault, 598 F.3d 990, 994 (8th Cir. 2010). If the first category applies, and the error at issue is not a structural defect, the reviewing court must then apply the harmless error analysis stated by the Supreme Court. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). Under Brecht, a claimed error only warrants habeas relief if it had a "substantial and injurious effect or influence in determining the jury's verdict." Id. Thus, while a constitutional error may exist, a defendant is not entitled to relief unless he or she can establish actual prejudice. Id. (citation omitted). The Supreme Court has applied harmless error analysis to a "wide range of errors" and "recognized that most constitutional errors can be harmless." Fulminante, 499 U.S.

at 306.

The Minnesota Court of Appeals assumed without discussing that the district court may have committed an error by identifying Kachina as the subject of the 2004 burglary testimony, but ruled any such error was harmless. Kachina, 2012 WL 171378, at *3, 5. As discussed above, the court's statement did not present unique information to the jury or "tip the scales" to resolve an evidentiary dispute between the parties.

Also, upon de novo review, the Court concludes that overwhelming evidence of Kachina's guilt existed apart from the 2004 burglary. Two eyewitnesses identified Kachina as trespassing on their respective properties, and Kachina misrepresented to one of them, D.L., that he was a neighbor. Kachina also fled three separate times when confronted about his conduct, including when police officers arrived. Kachina discarded his identification while being pursued, along with a GPS unit reported stolen from a car at a third residence. The evidence against Kachina was overwhelming, and the district court's single comment did not deprive Kachina of fundamental fairness. As such, any error by the court at trial was harmless. See, e.g., Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986) (holding evidence of guilt was overwhelming, and thus introduction of evidence of other crimes was harmless error).

Even if the evidence against Kachina had not been so substantial, the Minnesota Court of Appeals determined that the district court could have properly admitted evidence of Kachina's 2004 conviction to the jury as Rule 404(b) evidence. Kachina, 2012 WL 171378, at *5. This evidence would have more directly connected Kachina to the 2004 burglary, and, in all likelihood, have been more prejudicial to Kachina's defense. The fact that the district court chose the less prejudicial of two proper alternatives further demonstrates the harmless nature of any error.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Gary Allen Kachina's Objections [Docket No. 17] to Magistrate Judge Jeanne J. Graham's December 13, 2010 Report and Recommendation [Docket No. 16] are **OVERRULED**;

2. The Report and Recommendation is **ADOPTED**; and

3. Kachina's Petition for Writ of Habeas Corpus Under § 2254 [Docket No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                                            BY THE COURT:


                                                            　　s/Ann D. Montgomery　　
                                                            ANN D. MONTGOMERY
                                                            U.S. DISTRICT JUDGE

Dated:  January 31, 2013.